The next case in our call this morning is agenda number 7, case number 108-689, People of the State of Illinois v. William E. Sargent. You may proceed, counsel. State your name for the record, please. Good morning, Your Honors. May it please the Court, my name is Deborah Pugh from the Office of the State Appellate Defender, and I represent William Sargent. Out-of-court statements were essential to the state's case against William Sargent, and this is particularly true with regard to the younger complainant, M.G. Sargent was convicted of five counts related to M.G. However, M.G. offered no testimony related to any abuse against him, and indeed no testimony was offered at trial related to any abuse against M.G. All of the evidence related to M.G. came from Sargent's statement and from M.G.'s two out-of-court statements. M.G.'s side of the story came only from hearsay, and that was the only evidence that was used to corroborate Sargent's confession. The hearsay was allowed in this case only under section 115-10, and that statute has certain requirements that protect defendants' rights. For instance, that section requires that when hearsay comes in, that the jury must be instructed into the nature of the statement and the circumstances under which the statement was made. But here the jury was given no such instruction. Additionally, IPI 1166, which tracks that statute, additionally requires that the jury be instructed to consider whether the statements were made at all. The appellate court and the state both recognize that an error was made here in failing to instruct the jury under the statute, based on both the statute and this court's decision in Mitchell. So there's no question that error occurred. The question is, was this error plain error? And plain error did occur in this case under both prongs of the plain error doctrine, both that the evidence was closely balanced and the error was serious enough to violate Sargent's substantial rights. Moving on to the first prong of plain error, this court's decision in Peeble v. Mitchell is very much on point. In Mitchell, there was another child sex abuse case in which the child offered consistent hearsay statements. She made statements to a detective and to a state's attorney that she had been sexually abused by the defendant. However, at trial, her testimony was inconsistent. She said both that she had been abused and that she hadn't been abused by the defendant. The defendant made an inculpatory statement, which she did not challenge. So in Mitchell, there was consistent hearsay, inconsistent testimony, and an unchallenged statement. This court in Mitchell found that the evidence was closely balanced and that, therefore, it was a versatile error to fail to instruct the jury, according to the hearsay statute. Now, by contrast, in this case, there was inconsistent statements from MG. MG made two statements. The first statement was to a DCFS investigator named Joseph Veranda. And it's unclear exactly what MG said because Veranda reported that statement differently two different times. But the gist of it was that MG indicated that there had been some abuse by Sargent. Shortly thereafter, Veranda interviewed MG on videotape. And in that videotape, MG made numerous statements. He said Sargent hadn't abused him. He made several statements saying that there had been no abuse. Ultimately, MG said that Sargent had digitally penetrated him. Veranda asked him how many times has it happened. And MG wrote the numeral one on a board. Veranda said, did it happen one time? And MG nodded. Almost immediately thereafter, Veranda turned off the videotape. So here, there was the inconsistent hearsay saying that it did and it didn't happen, plus this statement that Veranda reported that was apparently not reported verbatim, reporting some sort of abuse. Any significance to the quality of the confession in this case versus Mitchell? It's unclear what the confession actually consisted of in Mitchell. In Mitchell, it was written and not videotaped. But there was no detail given in either this court's decision nor in the appellate decision as to what level of detail he had gone into. And so it's unclear whether that's a major factor in terms of whether the amount of detail gone into. Does the defendant's argument that he wanted to please the detectives make any sense in light of the fact that he strongly disagreed that he committed certain other illegal sexual conduct suggested by the officers? I think it's, the defendant challenged his statement and he did, he indicated that he was tired and that he was confused. And he did push back with regard to certain, with regard to certain charges, the charges that I think in the defendant's mind would have been even more serious. And so the fact that maybe that he didn't agree to all of the charges that the officer was discussing with him doesn't necessarily indicate that he was telling the truth up until that point. And then at that point, he pushed back. I think that the fact that he was able to go against the detective with certain, regarding certain charges doesn't necessarily mean that everything he said up until then was actually true. So, and moreover in Mitchell, the statement wasn't challenged at all. So Sargent did challenge the statement. But in Mitchell, even if, even if one ignores Sargent's challenge to the statement, the evidence in Mitchell is in fact still strong, is still stronger than the evidence here. Because in Mitchell, you have consistent hearsay, whereas here you have inconsistent hearsay. In Mitchell, you have inconsistent testimony, whereas here you have no testimony whatsoever. But isn't there a big difference between Mitchell and this situation? In Mitchell, there was no hearing regarding the information. And in here, there was a hearing. No, that's definitely true that in Mitchell there was no reliability hearing. In the decision, it's a little bit unclear whether this court was mostly focusing on the state's attorney's testimony regarding the, regarding the complainant's hearsay or whether it was also focusing on the detective's. But in either case, it's definitely true that there was no reliability hearing. There was a hearing to some degree regarding the detective. However, even if one ignores Sargent's challenge to a statement, and even if one ignores the hearsay testimony, the hearsay statements in Mitchell, the evidence here is still stronger. So if one assumes that the Mitchell court ignored the hearsay statements because of the lack of reliability hearing, and if the court here ignores Sargent's challenge to his confession, what we're left with is inconsistent testimony in Mitchell versus inconsistent hearsay in this case. And so the hearsay in this case was out of earshot of the jurors. The defense had no ability to cross-examine. And it was done under certain circumstances that one of the statements was reported differently at two different times, and the other statement was made inconsistently, and then once the one inculpatory statement was made, the videotape was turned off. Whereas in Mitchell, this was all done in front of the jury. And this court noted in Mitchell that the testimony was inconsistent for whatever reason, but determined that that inconsistency led to the evidence being closely balanced. And here we have similar inconsistency. However, the inconsistency was in hearsay and not even at testimony. Isn't it clear, though, that the defense didn't ask for an instruction? It's true that the defense didn't ask for an instruction. And given the fact that there was a pretrial hearing, wasn't an instruction unnecessary then? Well, no, the instruction is for, there was a pretrial hearing into the reliability, but the instruction is for the jurors. In order for the jurors to consider what effect the lack of ability to cross-examine at the time was. What fact that Joseph Verano was claiming to be repeating something that MG told him, but it's unclear whether it was verbatim and Verano didn't really explain what exactly MG had said. And the jurors weren't told to consider the fact that this was on video and that the video was cut off before MG was able to say any more about the allegation. So he was saying no, no, no, and then he said yes, and then the videotape was cut off. And so the jurors, while there was a reliability hearing, none of that had anything to do with what the jurors were actually told to consider. And again, IPI 1166 tells the jurors even to consider whether the statement had even been made, which is relevant in terms of Joseph Verano's statement. And so here the jurors were not given any instructions in terms of how to consider the statements. And the evidence here was even weaker than it was in Mitchell because it's a matter of inconsistent testimony in Mitchell versus inconsistent hearsay in this case, all with regard to MG. And so for these reasons, the plain error has been proved on the first prong. Now moving on to the second prong of plain error. It's well recognized that hearsay is subject to particular hazards, and this court has long recognized that, as has the U.S. Supreme Court. And here, MG's hearsay statements were the only things that corroborated Sargent's statement with regard to MG, and it was the convictions related to MG that led to Sargent's mandatory life sentence. So here we have a mandatory life sentence that was premised on hearsay, but the jurors weren't instructed in terms of considering the hearsay. Now the statute recognizes these dangers, which is why it includes a safeguard, including the reliability hearing and the instruction to the jurors, and it obviously wasn't given here. And so in this case there was no testimony from MG, and there was also no testimony from anyone else about abuse related to MG. And JW, who also testified at trial about his own abuse, didn't offer any hearsay statements or testimony regarding abuse of MG. So the abuse of MG came only from the hearsay, the evidence of the abuse came only from the hearsay and from Sargent's statement. Now we would only reverse it on the trial court's failure to instruct the jury when the omission creates a very serious risk that the jurors erroneously convicted the defendant because they didn't understand the applicable law. What is, how is that satisfied here, and what is the applicable law that they didn't understand? Well the jurors weren't told, the applicable law is merely that the jurors should have been told how to consider the hearsay statements. And they were given the instruction about how to consider testimony of a witness, but there was nothing in terms of recognizing the hazards of hearsay and telling the jurors to consider where the statement was made, what might have been going on, what led to this statement, and that the fact that MG wasn't cross-examined at the time. And so there was no, so the law that had to be applied was simply the law to tell the jurors that this is special evidence that you're hearing here, and so this is how you have to consider it, this is what you have to keep in mind when you're weighing it. It's different from in-court testimony, it's different from when the person is under oath in front of you, subject to cross-examination, this is, this evidence is of a different character. And so to not be instructed to that leads to certain weakness in the conviction because the jurors just, this was the only evidence related to MG, that, the only evidence related to MG's side of the story, and the only evidence that corroborated Sargent's statement. And so for those reasons it was, it was plain error. And now the appellate court determined that it wasn't plain error because it looked at Booker, People v. Booker, which was an appellate court decision decided before this court's decision in Mitchell. Now this case, Booker v. Mitchell, are all similar in one regard, which is that in all three cases, IPI 1.02, the general witness instruction was given, but the jurors weren't instructed as to the hearsay, as to the hearsay statements. Now Booker determined that there was no plain error because it determined the jurors wouldn't distinguish between testimony and statements and that they would know, that they would know to weigh the hearsay statements. Now Mitchell determined otherwise, and Mitchell focused on the essential, that they have to be told to be given the weight and credibility to be given the hearsay statement and not just the testimony. And that they should be told to consider the nature of the statement and the circumstances under which the statement was made. And 1.2 being only about in-court testimony just simply doesn't address the hazards of hearsay. It's just a different kind of instruction that's very vague and general and refers only to in-court testimony. And so it just simply doesn't instruct the jurors as the hearsay instruction does, nor does it as 116.66 instruct them to consider whether the statement was made at all. And so the court in this case determined that Mitchell actually didn't mind that Mitchell was focused only on the age, that the instruction given in Mitchell didn't include the age in 1.02, whereas in this case it did include the age. It said to consider the age and maturity of the witness. However, Mitchell clearly was focused on all of these aspects. The age was only one of the things, and that was sort of in the middle of the weight and credibility of the statement and the nature of the statement and the circumstances of the statement. And so the appellate court was incorrect in determining that this court actually felt that that 1.02 would be sufficient. That's not what Mitchell said at all. Moreover, it's important to note that Booker is a much stronger case than Sartin is. In Booker, perhaps it maybe wouldn't have been plain error because in Booker there was so much evidence other than the hearsay that led to the conviction. In Booker, the complainant went on the stand and testified consistently as to the abuse. So the jurors, in order to find the Booker defendant guilty, didn't have to rely only on hearsay, whereas with MG they could rely only on hearsay. And in Booker, there was also an incriminating statement by the defendant. And so in both cases, there was a statement by the defendant to consider and the complainant's allegations. But in Booker, there was also in-court testimony, whereas in this case, the juror could have only found Sartin guilty with regard to MG by looking at the hearsay. So for all those reasons that it's plain error under the second prong. Now it's important to stress that Sartin is not asking for a per se rule with regard to plain error under the second prong. It's easy to imagine cases such as Booker, perhaps, in which plain error wouldn't have occurred even if the court failed to comply with the statute and failed to properly instruct the jury. It is in this case, with regard to MG in particular, where all of the evidence to supply MG's side of the story came from hearsay. And that shows the true dangers of failing to instruct the jurors because they could not have found Sartin guilty had it not been for the hearsay. But they were given no tools with which to specifically consider that hearsay. And for both of those reasons, there is plain error under both the first prong and the second prong. And for these reasons, we ask this court to vacate the convictions and to reverse for a new trial. Now moving on to the corpus delicti argument. There were five convictions related to MG. Three of those related to digital penetration and two of them related to fondling. Four of those charges were uncorroborated by any evidence provided by MG. Sartin confessed to multiple instances of abuse. MG, however, said that one and exactly one instance of digital penetration occurred. When Joseph Veranda asked him how many times he had been digitally penetrated, MG wrote on the board one. And then Veranda confirmed with him, you mean one time? And MG indicated yes. And that was the only evidence of any abuse coming from MG. He said it happened one and only one time. Nevertheless, Sartin was convicted of five counts related to MG. But the law in Illinois requires more than that. The law in Illinois requires that the state present evidence outside of the confession to prove that every crime occurred. Now the state concedes here, quote, the non-confession evidence did not on its own establish two counts of predatory criminal sexual assault and aggravated sexual abuse of MG. The state, however, maintains that this is not required. And that one crime can be used to corroborate the other crimes. But that's not what Illinois law is typically held. And in fact, the appellate court also misread Illinois law. But if looking at this court's decisions related to corpus delicti, it becomes clear that, for instance, in People v. Bounds, that each independent crime must be corroborated, that evidence of one crime cannot be used to corroborate the others. In Bounds, the defendant was convicted of murder, sexual assault, and kidnapping. Now the murder was amply proved. And the defendant on appeal argued that the corpus delicti for the sexual assault and the kidnapping had not been proved. Now this court didn't say, well, the murder's been amply proved, so therefore that corroborates the other two crimes. That's not what happened at all. Rather, this court said, well, the murder was proved, and now let's look at the evidence of the sexual assault. Okay, the sexual assault was proved. Now let's look at evidence of the kidnapping. And there was no bootstrapping of saying, well, this one was proved, that corroborates that, and that corroborates that. But that's exactly what happened in this case, that there was evidence of one and only one instance of abuse coming from MG. But that conviction was used to corroborate the other convictions. And this is exactly how this court has considered corpus delicti in Bounds, in Cloutier, and in Howard. It's the standard way that this court has looked at corpus delicti, to look at each individual crime to make sure that occurred. Now the appellate court, along with using evidence of one crime to corroborate the others, also used JW's abuse to corroborate, to corroborate the abuse of MG. But JW didn't provide any evidence related to MG. And additionally, MG's videotapes said it happened one and only one times, but the court used that to say that it happened more than once. And the court also used MG's failure to report multiple crimes as proof that multiple crimes occurred, the very failure to report the appellate court used as proof. And the appellate court additionally put too much faith in one statement that Veranda made at trial, which was in fact different from the way Veranda had said it on pretrial. So for all of these reasons, that there was just simply no evidence to support these separate crimes, there was just evidence to support the one, four of the convictions related to MG should be vacated. Now the state argues that this court should not use corpus delicti at all, and should instead use the trustworthiness standard. Now the trustworthiness standard has been used for over 150 years in Illinois. It's used in the majority of states. And the state presents no compelling reason to change. Now this issue wasn't raised in the appellate court, and it wasn't part of the PLA, so I'll try to address it very quickly before time runs out. The state cites several problems related to the corpus delicti issue, but none of these problems have ever actually occurred in Illinois in the 150 years that Illinois has been using corpus delicti. We have been able to convict people of tax evasion and in COA defenses, which defenses that the state says are impossible to prove using corpus delicti. And the state doesn't point to anything that has changed in the law since this court last affirmed its preference for corpus delicti in Lambert in 1984. Further, the state, well it says that the defendants don't need all the protections of corpus delicti because they have all these alleged new protections. It also says that, it objects because it says that the corpus delicti rule doesn't protect defendants enough. However, the fact that the corpus delicti rule doesn't protect defendants in all circumstances doesn't mean that it's not relevant for the times that it does protect defendants, which is when they confess to a crime. Does this statement from Howard Counsel have any impact? Evidence corroborating the statement of an accused need not independently establish the offense beyond a reasonable doubt. Rather, it is sufficient if the corroborating evidence tends to show the commission of the offense. That's exactly what Illinois law is, but it tends to show the commission of the offense rather than tends to merely corroborate the general truth of the defendant's statement by having certain key assertions or something like that. The Howard language says, which is true of Illinois law, that the corroborating evidence need not prove it beyond a reasonable doubt. That's well established, but it does have to tend to show that that crime occurred, that specific crime occurred. And going back to Howard itself, that looks to whether the murder corroborated that had a murder and an armed robbery. And this court, in determining corpus delicti in that case, looked if there was plenty of evidence related to the murder. But this court didn't say, well, the murder was corroborated, therefore that's enough to corroborate the armed robbery. Rather, this court looked to specific evidence to corroborate that the armed robbery itself occurred, which is what this court should do in this case as well, look to the specific evidence to determine whether more than one crime against MG was shown by the evidence. So for these reasons, I asked this court to vacate the four convictions related to MG and remand and reverse remand the other charges. Thank you. Thank you, counsel. Good morning, your honors, counsel. May it please the court. My name is Sherry Wong and I'm an assistant attorney general here on behalf of the people of the state of Illinois. Your honors, this case presents two issues and both of these issues are fairly narrow. But before I get into the merits of those issues, I just want to, right off the bat, make a few key facts clear. First, the defendant was convicted of six counts. Four counts of predatory criminal sexual assault and two counts of aggravated criminal sexual abuse. Five of the counts were against MG and one of the accounts was against JW. Now, unless your honors have a preference, I'd like to start with the corpus delicti issue. And the reason for that is if this court agrees that the people presented sufficient independent evidence corroborating the defendant's confession, either by applying the trustworthiness standard or by applying the rule as applied in Illinois, then this court can consider the defendant's confession as part of the people's proof and in assessing the sufficiency of the evidence. And when this court does that, the defendant's confession, in addition to all the other evidence, was sufficient to prove the defendant guilty beyond a reasonable doubt of all six offenses. In addition, this court can then consider the defendant's confession when it does the plain error analysis as to the defendant's instructional error claim. If this court disagrees and finds that the people did not present sufficient independent evidence corroborating the defendant's confession, then this court could vacate either of the four convictions that the defendant is challenging here with respect to the corpus delicti issue, but that would not change the defendant's life sentence. As we argued on page 18 of our brief, under 720 ILCS 5-12-14.1B1.2, a defendant who is convicted of two counts of predatory criminal sexual assault against two different child victims, that criminal defendant receives an automatic life sentence. And the defendant here is not disputing that the confession was sufficiently corroborated as to two separate counts of predatory criminal sexual assault. That is the one count against JW and the one count against MG. So even if this court were to vacate any of the four challenge convictions, those convictions would still stand and then the confession could still be considered as part of the people's proof when this court does the plain error analysis as to the defendant's instructional error claim. Now turning to the merits of the corpus delicti issue, I'd like to emphasize that we're not asking for this court to hold that an uncorroborated confession would be a valid piece of evidence. We're still arguing that the corroboration rule will be in play. We're simply asking for this court to modify that corroboration rule to use the standard that the federal courts have been using since 1954 and that an increasing number of state courts have started to use. And the reason for that is the Illinois version of the corpus delicti rule no longer serves its intended purpose. At common law and in Illinois case law, the reason that the corpus delicti rule was developed was because this court was trying to protect against convictions based on unreliable confessions. That is, confessions that were coerced or confessions that were the result of people who suffered from mental illness. They were confessing to crimes that did not happen or that they did not commit. And the defendant now wants to apply the corpus delicti rule to what would be an otherwise voluntary and valid confession. And where it is a voluntary confession, not the result of any coercion, that is a material piece of evidence that the fact finder should at least be allowed to consider. The fact finder should be allowed to hear that the defendant confessed to these crimes and the defendant at trial, which is what the defendant did here, the defendant can recant that confession, can disavow that confession, and then the confession is before the jury and then the jury can decide which version they find to be most credible. And here, there is no question that the defendant's confession was coerced in any way or was involuntary in any way. The defendant filed a motion to suppress his confession before trial and after suppression hearing, the trial court specifically found that the defendant's confession here was voluntary and not the product of any type  And a viewing of the videotaped confession was important and the jury was able to view that videotaped confession at trial, was able to view the defendant's recantation of that videotaped confession at trial, and the jury was able to determine whether or not they thought the confession was reliable. And here, after viewing that confession, they found that the confession was reliable and the recantation was not. A strict application of the corpus selecti rule is no longer necessary because we have all of these United States Supreme Court cases that talk about how a coerced confession is not allowed to be considered at a defendant's trial. In addition, suspects are required to be advised of their Miranda rights and if they're not advised of their Miranda rights, the results of the interrogation are not allowed to be admissible at trial. And most importantly, the Jackson v. Virginia constitutional proof beyond a reasonable doubt standard is more than a sufficient backstop to protect against convictions that are based on these types of confessions that would not rise to the level of a due process violation or an involuntary confession, but would be a confession that a defendant voluntarily confesses to something that he didn't do, but again, he can recant that confession, disavow that confession at trial. All we're asking is that the fact finder be allowed to hear that confession and then determine for itself whether or not that confession is reliable. And one of the reasons that there have been a number of criticisms leveled against the corpus selecti rule can have harsh consequences. A defendant argues that in this case we're not presented with a tax evasion case or we're not presented with an ECOA defense or conduct-oriented offenses which a number of legal commentators have talked about. It is difficult to apply those types, it is difficult to apply the corpus selecti doctrine too. But this case does present a similar type of case where it is difficult to strictly apply the corpus selecti rule and that is child sexual abuse cases. And the reason for that is it may be difficult to provide substantial independent evidence that would tend to show the commission of every single crime. And that is because child victims may find it difficult to testify at trial as to every single detail that happened to them. These acts are normally private. There may not be any physical evidence. And where you only have a confession, it may be difficult to prove a strict, it may be difficult to strictly apply the corpus selecti rule and that would then not allow what would otherwise be a valid and voluntary confession to go before the jury. Now here applying the trustworthiness standard that people presented substantial independent evidence that shows that the defendant's confession here was reliable. The defendant confessed to anal penetration. J.W. in his testimony testified as to anal penetration. J.W. and M.G. in their out-of-court statements talked about how the defendant either inserted his finger into M.G.'s anus or how the defendant inserted his penis into J.W.'s anus. So the main piece of evidence concerning anal penetration, that was corroborated. In addition, other details regarding defendant's confession were corroborated as well. The time period was corroborated, the location, and also the act of fondling. J.W. in his out-of-court statement talked about how the defendant masturbated him and the defendant masturbated him.  and J.W. talked about that in his out-of-court statement as well. So all of these key pieces of corroboration were present which shows that the defendant's confession was in fact trustworthy and reliable enough so that the jury could at least hear that confession. The defendant wants the jury not to hear this confession at all, but it is a valid piece and indeed a powerful piece of evidence and that's why the jury has not heard it at all since this Court decided Lambert in 1984 and that is correct, but this Court in 1990 in People v. Furby noted that in that case the State did not argue to relax the corpus delecti rule or to dispense with the rule entirely so this Court did not have occasion to address the rule in that case. But we're making this argument now and now this Court has the opportunity to address the validity of the corpus delecti rule. Even if this... If we allow the... You're saying the defense wants the confession not to be heard, but if the confession is allowed the incidence of corroboration that you alluded to had nothing to do with the four charges that Ms. Pugh said should be vacated, one, two of predatory criminal sexual assault and two of the other charges. The only issue this Court has to consider is whether the confession is trustworthy. And under the corpus delecti rule we would have to find that there's some evidence to corroborate what's said in the confession. Is that correct? That's correct. Illinois applies a two-part test with respect to the corpus delecti rule. The people have to introduce substantial independent evidence that would allow defendant's confession to be considered as part of the proof if this Court adopts the closely related exception, which is what the appellate court did in this case. And by doing that, this Court can look to evidence of a closely related crime and consider that as circumstantial evidence tending to show the commission of another closely related offense. And with respect... It would go to show whether the defendant perpetrated the other crimes. I think defendant is not arguing here that his confession was sufficiently corroborated under that second prong of the corpus delecti rule. And for the reasons that we talked about, there was a substantial amount of evidence showing that the defendant's confession was corroborated. I think the main dispute here is whether or not the defendant presented  tending to show the commission of two counts of aggravated criminal sexual abuse. And here this Court can look to the offenses that were committed against J.W. in deciding whether or not the people presented independent evidence tending to show the commission of two counts of aggravated criminal sexual abuse. And then this Court can look to whether or not the defendant's confession also occurred. There was a significant amount of evidence that would tend to show the commission of these four counts. With respect to the two counts of predatory criminal sexual assault, this Court can look to the fact that M.G. in his out-of-court statement to DCFS investigator Veranda said that the defendant quote unquote puts his finger in M.G.'s anus when he's talking to DCFS investigator Veranda, which is what the appellate court did. The appellate court noted that upon viewing the videotaped interview, M.G. became nervous, he became evasive when the subject of sexual abuse came up, and that would tend to imply at least, it would at least constitute circumstantial evidence that would tend to show that predatory criminal sexual assault happened more than one time. And there is also the fact, that M.G. acknowledged that in his out-of-court videotaped statement. The briefs seem to indicate that this investigator characterized it two different ways, puts or had put. Are either of those statements videotaped directly from M.G.? That statement is not on videotape. And it is correct that he did say puts at one point and then put at another point. But it is important to remember that the corpus selecti prong one analysis, we only have to present sufficient evidence that would tend to show the commission of an offense. This is an extremely low standard. And here where there is M.G.'s out-of-court statement, you've got the videotaped interview, there's also the defendant's confession and M.G.'s out-of-court statement admitting to at least one count of predatory criminal sexual assault. Now with respect to the aggravated criminal sexual abuse charges, this court would look to the fact that J.W. talked about how the defendant fondled him. And this court could look to the fact that that is a closely related offense that could tend to show the commission that the defendant similarly fondled M.G. And when determining whether an offense is closely related, this court can just look to whether or not adopting that offenses of the corpus delicti rule, which is simply to ensure that the confession itself is reliable. And here we have child victims who are both brothers. They lived in the same house. We're talking about anal penetration. We're talking about the fact that the defendant had the opportunity to commit these offenses while he was living with these boys. Their M.G. was 4 or 5 at the time. And this court would look to the fact that the defendant fondled M.G. And this court could look to  offenses of the corpus delicti rule, which is simply to ensure that the defendant similarly fondled M.G. And here we have child victims who are both brothers. They lived in the same house. We're talking about the fact that the defendant fondled M.G. And here we have child victims       And here we have child victims who are both brothers. So there are inconsistencies between J.W.'s statements and the defendant's confession and J.W.'s statements and M.G.'s statements. Those are relevant and certainly reliable. This court can consider the inconsistencies. It can consider the similarities and determine whether or not the inconsistencies so outweigh the similarities such that the confession has been rendered completely unreliable. Have we ever approached this by applying the closely related crime doctrine to crimes committed against another victim? We have not specifically addressed that particular question, but other states have used this exception with respect to the corpus electi rule. Arizona and State v. Morgan, Indiana and Willoughby v. State, Commonwealth v. Taylor, Pennsylvania has adopted this closely related exception, but it is true that Illinois has not specifically adopted it. And would it be appropriate if M.G. specifically said that he was not fondled by the defendant? This court could consider that to be a relevant factor in determining whether the offense would be closely related. There was testimony from Jacqueline Weber who is a child sexual abuse accommodation syndrome expert and she talked about how children will sometimes not disclose all of the abuse that they have experienced. So the fact that there was that expert testimony would not necessarily, if M.G. disavowed the fact that the defendant had fondled him, that would not necessarily render the confession so untrustworthy as to have the exception apply here. Now turning quickly to the plain error issue, by failing to object to the trial court's failure to issue I.P.I. 11.66 at trial, and by failing to raise that issue in a post-trial motion, the defendant has failed to preserve that issue for review and he has failed to demonstrate that the evidence was closely balanced or that his trial was fundamentally unfair. Now the defendant with respect to the closely balanced prong argues that this case is similar to Mitchell, but the evidence in this case was much stronger than the evidence in Mitchell. So the fact that when this court views the videotaped statement and then looks at the fact that the defendant disavowed that statement, but that was an incredible disavowal of that statement, that is a compelling piece of evidence. The defendant argued that he was pressured into giving the statement that he was fatigued, but in the interview there is no indication that he was fatigued in any way, too he was so intimidated by the detective that he told him whatever he wanted to hear. And here the defendant again is not challenging the reliability finding that the trial court made with respect to the child victims out of court statements. So with respect to the evidence in this case compared to the evidence in Mitchell, the evidence was much stronger than it was in Mitchell. Now with respect to the prong it is true that the jury was not instructed to consider the witness's age at the time that they made their statements. They were not instructed to consider the nature and circumstances surrounding how the statement was made. But they were instructed via IPI 1.02 that they were to consider the witness's testimony and both of the child victims testified in this case. They were to consider that testimony and those are the child victims videotaped statements. They were also able to view the defendant's confession and because they were able to view all these things the jury was not left without any guidance on how to consider the evidence and they were also not improperly instructed on how to consider the evidence. This court has held that an improper or incorrect instruction is much more prejudicial than the appropriate instruction. So the jury was confused as how to apply the applicable law. Here they were simply not given an instruction but this court can look to the fact that the jury was also given IPI 1.02 and the fact that they were given that instruction that sufficiently ameliorated the error such that the defendant was not denied a fundamentally fair trial. If this court has no other questions we ask this case to close. So to turn things around again I'd like to begin at the hearsay issue and the state focuses on its assertion that sergeant's disavowal of his confession was not trustworthy, that this court should disregard sergeant's disavowal. However in Mitchell the confession was not disavowed at all so this would simply to ignore that disavowal would simply place this case with regard to the confession on equal ground with Mitchell. And then this court is still left with Mitchell's consistent hearsay, inconsistent testimony and the fact that in this case there was inconsistent hearsay and no testimony. Now so for this reason that the evidence in Mitchell really was stronger than this evidence even if this court ignores sergeant's disavowal. Now moving on to the evidence presented to him, MG responded I don't remember. That was all, that was all MG testified to with regard to any abuse related to any abuse by sergeant. And so the fact that the jury was instructed into how to consider the statement I don't remember, they were told how to weigh the evidence presented to them at trial and how to weigh witness testimony, that was their testimony that they got after he got one single incriminating answer. And then there was also the statement by Joseph Ronda that he varied when pretrial he said it one way, at trial he said it a different way. And so the jurors weren't instructed at all to consider well was this a verbatim statement, we don't know. And what effect did it matter at all that MG was making these statements on videotape and the videotape was turned off immediately after he made the statement.  jurors weren't told how to consider the statement, the second prong of plain error still applies because all of the evidence related to MG came from the hearsay and the jurors weren't told how to consider that hearsay. And this Court in Mitchell stressed that this instruction must be given. This is very special evidence. This kind of evidence, this kind of  considered in any other case that's been decided in Illinois related to this jury instruction issue because in this case the evidence on from MG's side of the story came only from hearsay. So for this reason it is essential that this statute that allows this very special evidence in be followed. Now moving on to the corpus delicti issue, the State is correct that even if this statute is not in effect, there is no corroborating evidence. Further, it's essential to stress that nowhere has Sergeant ever said that his confession should not have been admitted. That is not an argument raised in the appellate court, that is not an argument raised in this court. Sergeant has never once said that his confession should not have been admitted. And so that  in the appellate court. There is no argument that the confession related to JW and related to one of the charges against MG. There is no argument that the confession should not have been admitted. Now the State goes on to argue that the corpus delicti rule isn't necessary because there are all these constitutional protections. But as discussed before, all these constitutional protections are necessary. But a move to do that, there are 10 states plus D.C. that have moved to the trustworthiness standard. The overwhelming majority of states still use the corpus delicti rule. So to move to trustworthiness would place Illinois in the vanguard of states that have moved to this standard, which as the State acknowledges provides less protection for defendants. Now Illinois's defendants who have made confessions. And the trustworthiness simply does not provide the same amount of protections. Now the State argues that his confession was sufficiently corroborated. And the things that the State points to for the corroboration sort of point to the problems with the trustworthiness standard. The State says that the time period corroborates. That time period was two and a half years. And they corroborated in terms of the location. They lived in a very small apartment. M.G. said abuse happened in the living room. Sergeant said it happened in the living room, bedroom, and kitchen. These are very minor things to corroborate. Additionally M.G. said it happened when his mother wasn't home. Sergeant said these things happened when the mother was home. Now the State says that because this is a child sexual abuse case it is treated differently. That's why the hearsay was allowed in. The State says that this should be treated differently because children may be reluctant to testify at trial. M.G. was reluctant to testify at trial. That's why his hearsay statement was let in. So child sexual abuse cases are already treated differently and treated very differently from other cases in terms of allowing the defendant to testify at trial. The defendant's case in Richmond, which was the appellate court case that looked to very distinctly determine whether both kinds of penetration alleged that the defendant claimed that he had both vaginally and anally penetrated the complainant. The complainant said that it happened only anally. And the appellate court determined no, we really have to look to whether both of these crimes are true. And the State points to Jacqueline Weber's testimony about the crimes against him to corroborate all these crimes against M.G. also. There's nothing in Illinois law to support that. This is going far beyond the use of propensity evidence. This is sort of double bootstrapping to say he did this to J.W. so he might do this to someone else and that will prove that that crime even existed against the other  State did that, somehow corroborated the evidence, Jacqueline Weber never even spoke to these boys. She could have spoken to these boys and provided some kind of corroborating testimony perhaps. However, she didn't. This was just an expert who said this is kind of what happens, this is the way children might testify. But she never even spoke to these boys. And so while the State did not use a corpus delicti rule, and under the corpus delicti rule, this Court should vacate four of the convictions related to M.G. and additionally with regard to the hearsay issue, this Court should reverse and remand for a new trial. So unless this Court has any further questions, thank you very much.